## MIROTZNIK et al. v. UNITED STATES et al.

District Court, E. D. New York.

Feb. 23, 1946.

Morris K. Siegel, of New York City, J. Stephen Doyle, Jr., of Washington, D. C., and John J. Curry, of Falls Church, Va., for the motion.

Robert Halpern and Milton Sahn, both of New York City, opposed.

636

Before L. HAND, Circuit Judge, and MOSCOWITZ and BYERS, District Judges.

L. HAND, Circuit Judge.

This case comes up on the defendants' motion for a judgment summarily dismissing the complaint in an action to annul two orders of the Secretary of Agriculture, issued on December 18, 1942, and on December 18, 1944. The second order (which we shall call the "denial order") denied three applications of the plaintiffs for licenses to engage in the business of handling live poultry, upon the ground that they had engaged in that business without first securing a license, in violation of § 502(a) of the Packers and Stockyards Act, 7 U.S.C.A. § 218a (a): The first order (which we shall call the "revocation order") revoked a license, previously granted to two of the plaintiffs on the ground that they were "financially unable to fulfill their obligations as they became due in the usual course of business." The facts were as follows: On June 17, 1938, two of the plaintiffs, Mirotznik and Rosenberg, secured a license as poultrymen under § 502(b) of Title V of the Act, 7 U.S.C.A. § 218a (b), under which they did business until June 10, 1941, when the Secretary instituted a proceeding to revoke it under § 505, 7 U.S.C.A. § 218d. An examiner was appointed, who granted a hearing, at the conclusion of which he recommended revocation. The licensees filed exceptions to his report, which came on to be heard before the Assistant to the Secretary, who entered the "revocation order" upon the ground stated. Mirtoznik and Rosenberg did not seek to review this order as provided by the statute, but applied for a new license even before January 18, 1943, when the "revocation order" became effective. They continued their business, and Topolsky joined Rosenberg as a partner in what we understand to be a separate business. The first application for a new license was withdrawn, but the plaintiffs filed three more in 1944, all of which the Secretary denied because, as we have said, the applicants had engaged in the business without licenses.

Section 505 alone gives any power to the Secretary to revoke a license; it reads as follows: "Whenever the Secretary determines * * * that any licensee has violated or is violating any of the provisions of this title * * * if the violation is flagrant or repeated he may by order revoke the license of the offender." "This title" means Title V of the Act, which comprises §§ 501–505, 7 U.S.C.A. §§ 218 to 218d, and of these the only ones that can be "violated" are § 502(a), § 504, and, conceivably, § 502(b). Section 504 incorporates by reference §§ 202, 401, 402, 403 and 404 of the act, 7 U.S.C.A. §§ 192, 221, 222, 223, 224. However, as none of these sections so incorporated are relevant to the facts at bar, we disregard them. The situation presented was therefore this: If Mirotznik and Rosenberg had "violated" § 502(a) or § 502(b) the "revocation order" was valid, and so was the "denial order" because they had continued in business without any license. If, on the other hand, the "revocation order" was void, the original license remained in effect; and, although the "denial order" was valid, it was only because it was proper to deny them a second license while the first existed. Hence as to these two of the plaintiffs, the case turns upon whether the "revocation order" was void.

We are not altogether clear as to the exact reasoning which led to the revocation of the original license. Two theories are possible. As we have said, § 505 requires some "violation" of law—and a "flagrant" violation as well, although upon that we need not dwell. It would seem that the more plausible theory would be that a licensee must continue to fulfill all those conditions upon which concededly the grant of his license depends, and that, if he fails, his license automatically terminates. Once terminated, his continuance in business is a violation of § 502(a) and justifies a formal forfeiture of his license under § 505. The other theory is that by implication § 502(b) itself forbids continuing in business after the licensee has ceased to fulfill any of the original conditions, and that further continuance in business is a violation of that section. It makes no difference which theory we take to be the Secretary's, because as a new question, we should not agree with either. An order of revocation forfeits the licensee's right to do business, and takes away his livelihood, (for instance, in the case at bar Mirotznik and Rosenberg had been poultry dealers for twenty years); and it would seem that the power to impose such a forfeiture should be expressly given. There is no basis in the text for saying that the continuance of those conditions upon which the granting of a license depends, is a condition subsequent upon its

persistence. That might be desirable, but the statute does not say so; it provides for the positive revocation of licenses, and presumably does not mean to terminate them otherwise. Moreover, the licensee must "violate" some section in Title V; and, since § 502(b) neither proscribes, nor prescribes, any conduct after he gets his license, that section he clearly cannot "violate." True, he can "violate" § 502(a), and will do so if he keeps in business after he has lost his license, but, if he cannot lose his license automatically or otherwise than by an order under § 505, he will not find himself in that predicament, merely because his finances have got worse. Section 505 was not designed to declare the already existing termination of licenses, but to terminate them.

So much for our interpretation, independent of any administrative interpretation. The Secretary argues, and the Supreme Court has again and again so admonished us, that we should defer to all administrative interpretations. We of course agree, and we need not say that we should not yield in the case at bar, if the Secretary had so interpreted his powers before the "revocation order" was passed. He had not. Concededly he had promulgated no regulation, and the only reported decision is directly to the contrary, and precisely because no regulation had been promulgated. In re Thatford Live Poultry Inc., Agricultural Decisions, Vol. 1, pp. 435, 436. Although we were told at the bar and in the briefs that there had been contrary decisions, clearly there had not been that consistent interpretation to which we might feel bound to yield. True, it is always proper to invoke the "policy" of a statute as a whole as an aid to its interpretation; but that may prove a deceptive canon in practice. It should be remembered that a statute is generally the compromise between conflicting political interests, and that its "policy" is as likely to be found in its limitations as in its affirmations, and is in any event primarily embodied in the language chosen. No doubt that language is by no means conclusive, Markham v. Cabell, 326 U.S. —, 66 S.Ct. 193; and courts will not hesitate to disregard it, however explicit, when an overriding purpose is clear; but clear it must be, and it is anything but clear in the case at bar that the purpose went so far as to justify the construction put upon § 502(b). It follows that the "revocation order" was void; and the mo-

tion should be denied as to it. For the reasons given above, the motion should however be granted as to the "denial order."

We have hitherto disregarded Topolsky's case, because he is in a quite different position. He is Rosenberg's partner in what we understand to be a separate business, and we know of no reason which permits him as such to take advantage of Rosenberg's license. He was therefore engaged in business without any license and was within § 502(a); and it was proper to deny him a license on the ground on which the "denial order" was passed. The complaint will be dismissed as to him.

A judgment will be entered, denying the motion so far as it sought to dismiss that part of the complaint which seeks to annul the "revocation order," granting the motion in other respects, but declaring that the license of July 17, 1938, is effective in all respects.